1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  RICHARD A. PAULOO. JR.,          )   NO. CV 05-1134-MAN
                                     )
12                 Plaintiff,        )
                                     )
13       v.                          )   MEMORANDUM OPINION AND ORDER
                                     )
14  SOCIAL SECURITY ADMINISTRATION,  )
                                     )
15                 Defendant.        )
    _____ )

16

17

18       On May 5, 2005, Plaintiff filed a "Petition for Judicial Review of

19  a Final Order of the Social Security Administration Title 42 U.S.C. §

20  405(g) and/or Complaint (Verified)" (the "Complaint").   The Social

21  Security Administration ("SSA") is the sole Defendant named in the

22  Complaint.   On August 12, 2005, the parties filed a consent to proceed

23  before the undersigned United State Magistrate Judge for all proceedings

24  in this case, pursuant to 28 U.S.C. § 636(c).

25

26       Presently before the Court are cross-motions by the parties, each

27  seeking summary judgment in this action.

28

**PROCEDURAL BACKGROUND**

On July 11, 2005, Plaintiff filed a motion for judgment on the pleadings and/or for summary judgment ("Motion").[1]  In response, on August 23, 2005, Defendant filed a motion to dismiss the Complaint or, alternatively, for summary judgment.  Following additional briefing, on September 20, 2006, the Court issued an Order that:  denied Defendant's motion; denied the Motion to the extent that Plaintiff sought judgment on the pleadings; and ordered further briefing on the Motion with respect to Plaintiff's request for summary judgment.

Subsequently, at Plaintiff's request and based on medical reasons, this action was stayed.  On December 26, 2006, again at Plaintiff's request, the Court ordered the stay lifted.

On December 21, 2006, Plaintiff filed his Statement of Uncontroverted Facts and Conclusions of Law in support of the Motion. On December 26, 2006, the Court established a new briefing schedule.  On February 6, 2007, Defendant lodged a certified copy of the Administrative Record ("A.R.").

On March 1 and 2, 2007, Defendant filed its Opposition to the

---

[1]    The Court notes that the docket erroneously indicates the filing date for the Motion as July 22, 2005.

On July 26, 2005, Plaintiff filed a Supplemental Motion to Amend, seeking to amend the Complaint and the Motion in order to delete the "Second Issue" alleged in the Complaint at pp. 35-45 and any related argument.  On September 20, 2006, the Court granted the Supplemental Motion and ordered the Complaint and Motion deemed amended to delete this claim and related argument.

Motion and various documents in support of its Cross-Motion for Summary Judgment (collectively, the "Cross-Motion").[2]   On April 2, 2007, the Court amended the briefing schedule.   On April 27, 2007, Plaintiff filed a Memorandum in response to Defendant's March 1 and 2 filings, as well as two documents labeled as "Responses" to Defendant's Statement of Genuine Issues and the Administrative Record.   Plaintiff filed a "corrected" Memorandum on May 2, 2007.   On June 4, 2007, Defendant filed a Reply to Plaintiff's April 27 filings.   On June 12, 2007, Plaintiff filed a "Response" to Defendant's Reply.

Briefing on both the Motion and the Cross-Motion, thus, is completed.

**RELEVANT FACTUAL BACKGROUND**

The record before the Court establishes the following relevant events without any genuine issue of material fact:

In January 1996, Plaintiff began receiving retirement benefits from the SSA.  (A.R. 20.)  Plaintiff subsequently was convicted of a felony and was incarcerated, but continued to receive benefit payments.  (*Id.*) On August 12, 1997, the SSA sent Plaintiff a notice advising him that it planned to suspend his benefits based on his incarceration.  (A.R. 187.) On August 14, 1997, Plaintiff responded to the SSA's notice and objected to the suspension of benefits.  (A.R. 188-89.)

---

[2]   Although Plaintiff was incarcerated when this action commenced, by the time the Cross-Motion was filed, he had been released from custody.  (*See* Plaintiff's address change notices filed on January 18, 2007, and April 20, 2007.)

3

On October 11, 1997, the SSA informed Plaintiff that he had been overpaid benefits totaling $7,186.00, for payments made between January 1997, and August 1997, while he was incarcerated (the "Overpayment"),[3] and requested that Plaintiff refund the Overpayment. (AR 190-92.) Thereafter, Plaintiff sent numerous letters to the SSA, asking that he be sent copies of the pertinent appeal and waiver forms. After a protracted series of communications,[4] Plaintiff filed a request for reconsideration, which was denied. Plaintiff then filed a request for a hearing before an Administrative Law Judge, waiving his right to appear. (A.R. 193-225.)

On March 4, 1999, Administrative Law Judge ("ALJ") John L. Geb issued a decision. (A.R. 85-86.) ALJ Geb determined that the suspension of Plaintiff's benefits, due to his incarceration, was appropriate, and Plaintiff was liable for the Overpayment. (*Id.*) Plaintiff asked the Appeals Council to review ALJ Geb's March 4, 1999

---

[3]     Plaintiff does not challenge the fact of the Overpayment or the SSA's calculation of its amount. (*See* Complaint at 2: "Plaintiff does not contest the fact that he incurred $7,186.00 in overpayment from January 1997 to August 1997.")

[4]     Based on its review of the record, the Court sympathizes with Plaintiff's complaints, echoed throughout his filings in this case, about the efforts he was forced to undertake to exhaust his administrative remedies with respect to the SSA's decisions to suspend his benefits and seek repayment of the Overpayment. The record establishes that although Plaintiff, from the outset, promptly sought to obtain and submit the necessary forms, his repeated efforts were thwarted by the SSA's conduct, including, *inter alia*, failing to respond to Plaintiff's numerous clearly-written and respectful communications, passing off his requests to other offices, or losing the appeal documents he submitted and then, improperly, declaring Plaintiff's attempts to appeal to be untimely. (*See, e.g.*, A.R. 90-97, 141-47, 193-200, 202-19, 224-30, 232-34, 236-39, 273-74.) Regardless of the merits of Plaintiff's present claims, it is troubling that any claimant should have to go to such extraordinary lengths to proceed through the SSA's administrative appeals process.

decision.   (A.R. 240.)   While his appeal was pending, Plaintiff submitted a Request for Waiver of Overpayment Recovery to the SSA (the "Waiver Request").   (A.R. 231.)   After initially denying Plaintiff's request for review on the purported ground that it was untimely, on November 28, 2000, the Appeals Council vacated that order, after a review of the evidence showed that Plaintiff's request had been timely, and granted review.   The Appeals Council vacated ALJ Geb's decision of March 4, 1999, because the ALJ had misidentified the claim as one involving disability insurance benefits rather than retirement benefits and failed to provide any rationale for his conclusion that Plaintiff was not without fault with respect to the Overpayment.   The Appeals Council remanded the matter for further administrative proceedings. (A.R. 96-97.)

On June 28, 2001, ALJ Geb held a telephonic hearing with Plaintiff. (A.R. 109.)   On July 18, 2001, ALJ Geb issued a decision, in which he found that Plaintiff's benefits had been suspended properly due to his incarceration, and the Waiver Request should be granted.   (A.R. 109-12.) After reviewing Plaintiff's claim applications, ALJ Geb concluded that "there is no evidence [Plaintiff] was informed of his duty to report his incarceration due to a felony conviction," "he was not properly informed of his duty to report" his incarceration, and therefore, Plaintiff was not at fault with respect to the Overpayment.   (A.R. 110.)   ALJ Geb further concluded that it would be against equity and good conscience to require Plaintiff to repay the Overpayment, because he would suffer financial hardship, given that he was incarcerated, had no ability to make repayment, and had no assets or other income.   (*Id.*)

Because he disagreed with AlJ Geb's conclusion that the suspension of benefits was proper due to his incarceration, Plaintiff asked the Appeals Council to review that portion of ALJ's Geb's July 18, 2001 decision.   Plaintiff expressly noted, however, that he was not challenging ALJ Geb's decision on the Waiver Request and wished to appeal only the "portion" of the ALJ's decision regarding the propriety of suspending Plaintiff's benefits due to his incarceration.  (A.R. 113-20.)   The Appeals Council again erroneously dismissed the request for review on the ground that it was untimely, but retracted that dismissal when a review of the file showed that Plaintiff's request, in fact, had been timely.  (A.R. 141-47.)

On August 22, 2002, the Appeals Council vacated ALJ Geb's July 18, 2001 decision in its entirety and remanded the claim for further administrative proceedings before a different ALJ.  (A.R. 148-50.)  The Appeals Council, *inter alia*, rejected ALJ Geb's finding that Plaintiff was not at fault in incurring the Overpayment, reasoning:

> By signing the application for old-age insurance benefits, [Plaintiff] affirmed that his reporting responsibilities had been explained to him.  Moreover, by signing the application for child's insurance benefits, [Plaintiff] agreed to inform the Administration immediately if any child for whom he was applying was incarcerated for conviction of a felony as well as to return any benefit check issued for the child if this event occurred.  This cautionary information reasonably should have led the claimant to question his continued receipt of benefit payments to him, given his incarceration pursuant to

a felony conviction.  Notwithstanding the above, information provided on an individual's application for benefits does not constitute the sole source of information provided by the Social Security information to its beneficiaries.

(A.R. 149-50.)  The Appeals Council noted that the cassette tape recording of the June 28, 2001 hearing before ALJ Geb was lost, and it directed the new ALJ to hold a *de novo* hearing on the issues of fault and waiver with respect to the Overpayment, as well as the separate issue of the propriety of the suspension of Plaintiff's benefits.  The Appeals Council further directed the ALJ to attempt to obtain a copy of the information pamphlet that would have been provided to Plaintiff with his Notice of Award when the SSA determined he was entitled to benefits. (A.R. 150.)

On November 4, 2002, Plaintiff filed a complaint in this Court in Case No. CV 02-8351-JVS (MAN) (the "Prior Action").  The complaint in the Prior Action challenged only the SSA's decision to suspend benefits based on Plaintiff's incarceration.  On September 2, 2003, judgment on the merits[5] was entered in the SSA's favor.  The United States Court of Appeals for the Ninth Circuit affirmed the Prior Action judgment on January 15, 2004.

While the Prior Action was pending, Plaintiff's administrative proceedings went forward.  On May 13, 2003, ALJ Patti Hunter held a

---

[5]     Although the SSA raised the issue of failure to exhaust administrative remedies in the Prior Action, the SSA failed to produce any competent evidence on this issue.  Hence, the Court addressed and resolved the merits of Plaintiff's claim in the Prior Action.

telephonic hearing.   (A.R. 26-47.)   During that hearing, Plaintiff argued, in essence, that the SSA lacked the power to remand on the Overpayment issue, because the ALJ's July 18, 2001 decision in Plaintiff's favor on that issue was res judicata, and the SSA was not entitled to remand *ad infinitum* until it gathered sufficient evidence and applied the law to reach the desired conclusion. (*See, e.g.,* A.R. 30.)   On or about October 30, 2003, the SSA asked Plaintiff to provide copies of "all documents you may have regarding your Social Security Hearing." (A.R. 288.)   On November 24, 2003, Plaintiff responded that he would be willing to copy his entire file for the SSA once he had adequate funds in his trust account, which he anticipated would occur in late January 2004.   (A.R. 287.)   The SSA responded that it needed only five selected documents, which appear to have consisted of Plaintiff's request for review of Judge Geb's July 18, 2001 decision and miscellaneous communications between Plaintiff and the SSA regarding holding a telephonic hearing before ALJ Hunter. (A.R. 289.)   On March 4, 2004, the SSA advised Plaintiff that the record was "closed." (A.R. 290.)

On March 18, 2004, ALJ Hunter issued a decision in which she concluded that the Overpayment should not be waived, because Plaintiff was not without fault in causing and accepting it and its recovery would not defeat the purpose of the Social Security Act or be against equity and good conscience. (A.R. 20-25; *see especially* A.R. 23-24.)   She also concluded that the suspension of Plaintiff's benefits was appropriate due to his incarceration.   (A.R. 22-24.)   On November 22, 2004, the Appeals Council denied Plaintiff's request for review.   (A.R. 7-10.) This federal action followed.

**PLAINTIFF'S CLAIMS**

Plaintiff alleges that there are four issues to be resolved by his Complaint:  (1) whether the Appeals Council exceeded its "discretionary authority" through its August 22, 2002 order remanding the case for a new hearing and decision by another ALJ; (2) whether ALJ Hunter's finding that Plaintiff was at fault is supported by substantial evidence; (3) whether it is against equity and good conscience to require Plaintiff to repay the Overpayment; and (4) whether the hearing held by, and the record before, ALJ Hunter were incomplete.  (Complaint at 2, 9-34.)  As relief, Plaintiff seeks to have ALJ Geb's July 18, 2001 decision on the Overpayment issue reinstated.  (Complaint at 46.)

**DISCUSSION**

I.   <u>The Standard For Granting Summary Judgment</u>.

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Federal Rules of Civil Procedure, Rule 56(c).  The Supreme Court, in three decisions -- <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S. Ct. 2548 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S. Ct. 2505 (1986); <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 106 S. Ct. 1348 (1986) -- has stated the standards for reviewing motions for summary judgment.  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  <u>Celotex Corp.</u>, 477 U.S. at 323, 106 S. Ct. at 2553.  However, the moving

9

party need not disprove the other party's case.  *Id*. at 323-24, 106 S. Ct. at 2553.  The moving party need not produce admissible evidence showing the absence of a genuine issue of material fact when the nonmoving party has the burden of proof, but may discharge its burden simply by pointing out that there is an absence of evidence to support the nonmoving party's case.  *Id.*

Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and, by the party's own affidavits or by other evidence, designate "specific facts showing that there is a genuine issue for trial."  Federal Rules of Civil Procedure, Rule 56(e).  The nonmoving party must submit some evidence establishing the elements that are essential to that party's case, and for which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322, 106 S Ct. at 2552.  When assessing whether the nonmoving party has raised a genuine issue, the court must believe the nonmoving party's evidence and must draw all justifiable inferences in its favor.  <u>Anderson</u>, 477 U.S. at 255, 106 S. Ct. at 2513.  Nevertheless, "the mere existence of a scintilla of evidence" is insufficient.  *Id.* at 252, 106 S. Ct. at 2512. When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. <u>Matsushita</u>, 475 U.S. at 586-87, 106 S. Ct. at 1356.

"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party."  <u>Soremekun v. Thrift Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007).  Evidence must be admissible and cannot be conclusory

1   or speculative.  *Id.*  These same rules govern cross-motions for summary
2   judgment.  <u>Marable v. Nitchman</u>, 511 F.3d 924, 929 (9th Cir. 2007).

3

4   II.  <u>Did The Appeals Council Act Appropriately In Reviewing ALJ</u>
5       <u>Geb's July 18, 2001 Decision In Its Entirety</u>?

6

7       When Plaintiff sought review in the Appeals Council with respect to
8   ALJ Geb's July 18, 2001 decision (the "2001 Decision"), Plaintiff
9   attempted to limit his appeal to only the unfavorable portion of the
10  2001 Decision, namely, the ALJ's finding that the suspension of
11  Plaintiff's benefits due to his incarceration was proper.  In its August
12  22, 2002 order, however, the Appeals Council reviewed the 2001 Decision
13  in its entirety, vacated the 2001 Decision in full (including ALJ Geb's
14  favorable finding that the Waiver Request should be granted), and
15  directed that the case be resolved on remand by a different ALJ.

16

17      By his first claim alleged in the Complaint, Plaintiff contends
18  that the Appeals Council exceeded its discretionary authority by
19  vacating the 2001 Decision with respect to the favorable Waiver Request
20  finding and ordering a new hearing.  (Complaint at 2, 9-14.) Petitioner
21  alleges that the 2001 Decision granting the Waiver Request was res
22  judicata or collateral estoppel on that issue.  (*Id.* at 10-11; Motion at
23  13.)  As he did in his administrative proceedings, Plaintiff relies on
24  the following three decisions:  <u>Sisco v. United States Dep't. of Health</u>
25  <u>and Human Services</u>, 10 F.3d 739, 746 (10th Cir. 1993); <u>Thaeta v.</u>
26  <u>Shalala</u>, 826 F. Supp. 1250, 1252 (D. Colo. 1993); <u>Sanders v. Sec'y. of</u>
27  <u>Health and Human Services</u>, 649 F. Supp. 71, 73 (N.D. Ala. 1986).
28  (Complaint at 13; Motion at 12.)

1    Defendant argues that this Court lacks jurisdiction to consider the
2    propriety of the Appeals Council's August 22, 2002 order, because that
3    order was not the "final decision" of the SSA's Commissioner and,
4    according to Defendant, is insulated from review. (Cross-Motion
5    Memorandum at 5.) Defendant argues further that, in any event, the
6    Appeals Council "was free to consider and to vacate ALJ Geb's decision
7    in its entirety," pursuant to 20 C.F.R. § 404.976(a). (*Id.* at 6.)

8

9    Both parties' arguments fail to address the critical issue
10   presented by Plaintiff's first claim. Plaintiff's reliance on the res
11   judicata/collateral estoppel doctrines is misplaced. An ALJ decision is
12   not a "final decision," within the meaning of those doctrines, unless
13   and until it becomes the decision of the Commissioner, whether because
14   no appeal is taken or the Appeals Council acts, either on a request for
15   review or its own motion. *See, e.g.,* <u>Bass v. Social Security Admin.</u>,
16   872 F.2d 832, 833 (9th Cir. 1989). The three decisions Plaintiff cites
17   do not support his argument and, instead, bear on the question of
18   whether a remand for further proceedings or an award of benefits should
19   be ordered upon a federal court's finding of reversible error.

20

21   Defendant's contention that this Court may not consider the
22   propriety of the Appeals Council's August 22, 2002 decision is
23   unpersuasive.[6] When claims have at their core a challenge to a decision
24   made regarding social security benefits, whether procedural or
25   substantive, they may be raised only under 42 U.S.C. § 405(g), even if

26   _____

27   [6]   Defendant's reliance on 20 C.F.R. § 404.976(a) to support its
      argument is misplaced. This regulation simply provides that the Appeals
28   Council may "limit" the issues to be considered on review, provided that
      it notifies the parties of the limited scope of review to be undertaken.

they raise constitutional issues and challenges and regardless of the relief sought. *See* Heckler v. Ringer, 466 U.S. 602, 615, 104 S. Ct. 2013, 2021-22 (1984); Weinberger v. Salfi, 422 U.S. 749, 757-62, 95 S. Ct. 2457, 2463-65 (1975). By his first claim, Plaintiff challenges the procedure by which the SSA ultimately denied the Waiver Request. While this challenge is collateral to Plaintiff's primary contention set forth in his remaining claims -- *viz.*, that the SSA's denial of the Waiver Request was improper -- it nonetheless is integrally related to those remaining claims. If Plaintiff's argument that the Appeals Council lacked the authority to reconsider the favorable portion of the 2001 Decision is correct, that portion of the 2001 Decision arguably would serve as the Commissioner's final decision for purposes of the Overpayment issue and, thereby, would moot his remaining claims. A challenge collateral to the claimant's substantive claim to benefits may be cognizable when it constitutes a challenge to the procedure by which benefits were denied. *See* Mathews v. Eldrige, 424 U.S. 319, 326-32, 96 S. Ct. 893, 899-901 (1976). Moreover, as discussed below, numerous federal courts, at both the circuit and district levels, have considered the challenge effectively made by Plaintiff's first claim and have not found jurisdiction to be lacking.

Accordingly, the Court finds that it has jurisdiction to consider Plaintiff's first claim. *See* Boettcher v. Sec'y. of Health and Human Services, 759 F.2d 719 (9th Cir. 1985)(jurisdiction existed to consider the merits of plaintiff's collateral claim that, after he requested reconsideration of a partially favorable initial determination, the SSA should not have ordered a *de novo* hearing on all issues); Elliott v. Weinberger, 564 F.2d 1219, 1230 (9th Cir. 1977)(holding that a

1   suspension or reduction of retirement benefits due to an overpayment

2   implicates due process and may be effected only if the claimant is

3   afforded procedures consistent with due process), *aff'd. and rev'd. by*

4   Califano v. Yamasaki, 442 U.S. 682, 99 S. Ct. 2545 (1979).

5

6       Turning to the merits of the first claim, the question of whether

7   the Appeals Council is entitled to review the entirety of an ALJ's

8   decision even though the claimant requested review of only the

9   unfavorable portion(s) of the decision (as occurred here) is an

10  unsettled legal issue.  The Third and Eleventh Circuits have held that,

11  when a claimant seeks review of only the unfavorable portion of an ALJ's

12  decision, the Appeals Council must provide the claimant with notice of

13  its intent to review the entirety of the ALJ's decision, including the

14  favorable portion(s).  *See, e.g.,* Baker v. Sullivan, 880 F.3d 319, 320

15  (11th Cir. 1989); Kennedy v. Bowen, 814 F.2d 1523, 1527-28 (11th Cir.

16  1987); Powell v. Heckler, 789 F.2d 176, 179 (3d Cir. 1986).  Moreover,

17  both the Third and Eleventh Circuits have held that, when such notice

18  has not been provided, the Appeals Council lacks authority to expand the

19  scope of review beyond that requested by the claimant, and the favorable

20  portion(s) of the underlying ALJ decision should be reinstated.  *Id.* at

21  179-81; Kennedy, 814 F.2d at 1528-29; Bivines v. Bowne, 833 F.2d 293,

22  296-97 (11th Cir. 1987)[7]

23

24

25       [7]    *See also* Thomas v. Bowen, 693 F. Supp. 950, 952-53 (W.D. Wash.
    1988), holding that:  the claimant's request for review of a limited
26  issue "did not authorize the Appeals Council to review the entire
    decision, including the underlying finding of disability"; and because
27  the Appeals Council failed to give notice within 60 days of its intent
    to review the entirety of the ALJ's decision, "the Appeals Council lost
28  the ability to consider any issues beyond those presented by" the
    claimant's request for a limited review.

The Sixth and Seventh Circuits, in contrast, have concluded that the mere fact that a claimant has requested review, even on a limited basis, invests in the Appeals Council the power to review the entire ALJ decision, and the Appeals Council is not required to give notice, within 60 days or otherwise, of its intent to broaden the scope of review. *See, e.g.*, <u>Hale v. Sullivan</u>, 934 F.2d 895, 898 (7th Cir. 1991); <u>Gronda v. Sec'y. of Health and Human Services</u>, 856 F.2d 36, 38-39 (6th Cir. 1988); <u>DeLong v. Heckler</u>, 771 F.2d 266, 268 (7th Cir. 1985).

The Eighth Circuit has taken the approach that, as long as the claimant receives some sort of after-the-fact notice that Appeals Council review may be expanded, the Appeals Council has the power to undertake a broad review even when the claimant has requested only a limited review. *See* <u>Culbertson v. Shalala</u>, 30 F.3d 934, 937 (8th Cir. 1994); <u>Clift v. Sullivan</u>, 927 F.2d 367, 368 (8th Cir. 1991).

Finally, the Third and Eighth Circuits have found that the notice of appeal rights provided to a claimant with the ALJ's decision suffices to afford the Appeals Council the authority to undertake a broader review than that later requested by a claimant, as long as the notice language warned of the possibility that, if review is sought, the Appeals Council may review and vacate both unfavorable and favorable portions of the ALJ's decision. *See* <u>Culbertson</u>, 30 F.3d at 937-38; and <u>Williams v. Sullivan</u>, 970 F.2d 11788, 1183 (3d Cir. 1992). In *dicta*, the Seventh Circuit has indicated that such notice language would foreclose any complaint by a claimant about the scope of the Appeal Council's authority to vacate a favorable decision. <u>Hale</u>, 934 F.2d at

15

898.[8]


The Court has addressed the above-noted out-of-Circuit authority, because the Ninth Circuit has not clearly addressed or resolved the specific issue presented by Plaintiff's first claim, that is, the Appeals Council's authority to review the entirety of the ALJ's decision even when the claimant has sought only a limited review of the unfavorable portion of the decision.  The Ninth Circuit's relevant decisions, at most, touch upon the issue in an ancillary fashion.  *See* Taylor v. Heckler, 765 F.2d 872 (9th Cir. 1985)(when the Appeals Council initiates *sua sponte* review under 20 C.F.R. § 404.969, it has "unlimited authority to review the merits of the ALJ's determination of disability," even when the ALJ's findings are supported by substantial evidence); Lombardo v. Schweiker, 749 F.2d 565, 567 (9th Cir. 1984)(*per curiam*) (rejecting the claimant's argument that, on remand to the second ALJ, the first ALJ's finding that the claimant was entitled to receive benefits for a one-year period should have been given res judicata effect, because "[t]he decision of an ALJ is binding only if neither party requests a review of the decision," and the claimant had requested Appeals Council review).


The Ninth Circuit's 1985 decision in Boettcher, *supra*, while most relevant, does not directly resolve the present issue.  Boettcher was partly successful at the reconsideration stage, but sought further

---

[8]   *But see* Thomas, 693 F. Supp. at 953, finding this same language to be "fundamentally unfair," "misleading and contrary to the [SSA's] regulations," because it constituted an attempt to "parlay claimant's appeal of a limited issue into a general waiver of the right to timely notice of the issues the Appeals Council intends to address."

reconsideration as to his onset date.  The SSA deemed his request to be a request for a hearing and sent a notice of hearing, which advised Boettcher:  that the hearing would be *de novo*; and of the issues to be considered.  Boettcher objected to the *de novo* nature of the hearing and refused to proceed, and the ALJ dismissed the request for hearing.  The Appeals Council declined to review the ALJ's dismissal order.  759 F.2d at 720.  In his federal action, Boettcher argued that he had been entitled to a hearing limited solely to the issue of his onset date, and the SSA thwarted his right to a hearing by requiring that a *de novo* hearing occur, thereby depriving him of due process.  *Id.* at 722.  The Ninth Circuit rejected this "novel" claim, concluding that the interests of both claimants and the "government" are served by proceeding with a full hearing, in that both share an interest in avoiding "an erroneous deprivation of benefits."  *Id.* and at 723.  The Ninth Circuit further observed that, because the SSA is empowered by 42 U.S.C. § 405(b) to conduct hearings on its own motion, "then [the claimant's] argument is reduced to a contention that such reconsideration must take place in a hearing separate from the one requested by the claimant," which is "nonsensical and wasteful."  *Id.* at 723.

No genuine issues of material fact exist with respect to Plaintiff's first claim.  Instead, the question is a purely legal one, namely, whether, as a matter of law, the Appeals Council exceeded its authority by reviewing, and then vacating and remanding to another ALJ for consideration, ALJ Geb's finding that the Waiver Request should be granted.  Given the lack of clearly controlling Ninth Circuit precedent on this issue and the conflicting out-of-Circuit precedent, that

question is not easily resolved.  For the reasons discussed *infra*, the Court's resolution of Plaintiff's remaining claims renders a resolution of his first claim unnecessary.  Given that the summary judgment issue, and this case, can be fully resolved by reason of the Court's decision on Plaintiff's remaining claims, the Court declines to, effectively, "make new law" based on an issue that need not be decided.  Accordingly, the Court declines to grant summary judgment on the first claim to either party, and instead will proceed to Plaintiff's remaining claims.

III.  <u>The Commissioner's Decision Must Be Reversed</u>.

By his second through fourth claims alleged in the Complaint, Plaintiff challenges the validity of that portion of ALJ Hunter's March 18, 2004 decision finding that the Waiver Request should be denied.[9] Plaintiff contends that:  the ALJ's finding that Plaintiff was not without fault in causing the Overpayment is not supported by substantial evidence; requiring Plaintiff to repay the Overpayment would defeat the purpose of Title II of the Social Security Act and be against equity and good conscience; and the record before ALJ Hunter was incomplete. (Complaint at 15-34.)

     A.   <u>The ALJ's Finding That Plaintiff "Was Not Without</u>
        <u>Fault" Was Not Supported By Substantial Evidence</u>.

When an overpayment has occurred, the SSA is precluded from

---

[9]   Because the Appeals Council denied review of ALJ Hunter's decision, that decision constitutes the final decision of the ALJ Commissioner for purposes of this case.  (A.R. 7.)

recovering it "from any person who is without fault," if recovery "would defeat the purpose of [Title II the Social Security Act] or would be against equity and good conscience." 42 U.S.C. § 404(b); *see also* 20 C.F.R. § 404.506(a). Under 20 C.F.R. § 404.507(b), "fault" may be found when the "facts show that" the overpayment "resulted from" a "[f]ailure to furnish information which [the recipient] knew or should have known to be material." In determining fault, the SSA must consider all of the "pertinent circumstances" surrounding the overpayment. 20 C.F.R. § 404.507; *see also* <u>Yamasaki</u>, 442 U.S. at 697, 99 S. Ct. at 2555. "The overpaid individual bears the burden of proving that he was without fault." <u>McCarthy v. Apfel</u>, 221 F.3d 1119, 1126 (9th Cir. 2000).

This Court reviews the Commissioner's decision on the Overpayment issue to determine if it supported by substantial evidence. <u>McCarthy</u>, 221 F.3d at 1125. "Substantial evidence is such relevant evidence as a reasonable mind might, upon consideration of the entire record, accept as adequate to support a conclusion." *Id.* <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996). Additionally, the Court is mindful that:

> In applying the recoupment statutes and regulations, one caveat must be kept in mind. These statutes and regulations assume that situations will arise in which improper payments are made by the Secretary and received and retained by the recipients. . . . Although such recipients are not entitled to the payments, the law assumes that the payments may have occurred through no fault of theirs. . . . The recoupment statutes and regulations do not assume that such recipients know the law nor hold them negligent because of their

1   ignorance. . . .    Instead, the law requires a careful

2   evaluation of the surrounding circumstances before a recipient

3   is found at fault and liability for repayment imposed.

4

5 Day v. Sec'y. of Health and Human Services, 519 F. Supp. 872, 876 (D.

6 S.C. 1981)(citation omitted).

7

8   1.    Plaintiff Has Met His Initial Burden.

9

10 Plaintiff consistently, both in his papers filed in this Court and

11 in his social security proceedings, has denied that he was aware of:

12 the obligation to report his conviction and incarceration until so

13 notified by the SSA in August 1997; and that these events would cause

14 his benefits to be suspended.  On August 6, 1997, the SSA sent Plaintiff

15 a form request, asking for information about his conviction.  (A.R.

16 185.)  On August 11, 1997, Plaintiff responded.  (A.R. 186.)  At the

17 close of his letter, Plaintiff stated:

18

19   Now that I have answered your questions I would

20   appreciate whatever answer you can give to questions I have.

21   My friend on the outside has said that my retirement has been

22   cut off.   I began paying into my retirement in the late

23   forties, and, except for part-time periods of employment I

24   worked full-time paying for my retirement.  My question is:

25   *How is this possible?  If it is possible and I am now indigent*

26   *please let me know what law makes this possible.*

27

28 (*Id.; emphasis added*)

On August 12, 2007, the SSA wrote to Plaintiff and advised that it planned to suspend his benefits based on his incarceration pursuant to a felony conviction.  The SSA invited Plaintiff to submit a response. (A.R. 187.)  In his August 14, 1997 response, Plaintiff again asked that he be provided with a "statute or legal reference" to support the suspension of benefits.  He also characterized his benefits as "the culmination of a contract with" the SSA, which was entered into when he began working and having a portion of his earnings paid toward future benefits, and stated that, "[d]uring the period of the contract between us I was never given notification of any possibility of termination, or suspension of the contract."  (A.R. 188.)  Plaintiff also noted that, when he was considering accepting a proffered plea bargain, one of his concerns was his retirement benefits, and he stated:  "I was assured that as long as my retirement was based on earning it could not be taken away."  (A.R. 189.)

At the May 2003 hearing before ALJ Hunter, prior to being placed under oath, Plaintiff stated:  "I had no idea whatsoever that I was going to lose my retirement that I worked for all those years." (A.R. 35.)  After being sworn, Plaintiff stated that, during the course of his criminal proceedings, he had "no idea" that a guilty conviction would cause his retirement benefits to be suspended, and he observed that, had he known that, he would have drawn his criminal proceedings out for the longest time possible, rather than agreeing to a fast track proceeding and related immediate plea bargain, in order to maximize the retirement benefits he would receive.  (A.R. 38, 40; *see also* A.R. 39 – "I'm saying my actions were the actions of a person who didn't know that he was going to lose his Social Security.")

Plaintiff also testified under oath that, when he applied for retirement benefits, he did not receive any written notice of the reporting obligation, and related suspension of benefits, that would arise from a conviction and incarceration.  (A.R. 39.)  When the ALJ asked Plaintiff if he had received any pamphlet describing the program when he applied for retirement benefits, Plaintiff responded, "No." (A.R. 39.)  He stated that:  later on, he "dealt with the local Social Security Office" and obtained every relevant pamphlet he could find; he reviewed each of the pamphlets he subsequently obtained; and he located a single reference, simply advising claimants to notify the SSA if they are incarcerated.[10]  Plaintiff learned of this pamphlet after he was convicted and incarcerated.  (*Id.*)  Plaintiff flatly denied being aware of his obligation to report his conviction and incarceration as of the time he was convicted and incarcerated, and he responded to the ALJ's question -- "You didn't know you were supposed to [tell the SSA of his incarceration]? -- as follows:

> That's the crux of the whole thing.  If I had known I was supposed to, believe me, I would have strung it [the criminal case] out as long as I could.  In other words, actions [INAUDIBLE], I'm a halfway decent reasonable intelligent person.  I have commonsense, and a person with basic commonsense and is halfway intelligent would not deliberately

---

[10]  In his May 10, 2004 request for review from the Appeals Council, Plaintiff identified this pamphlet as one entitled "Social Security - Understanding the Benefits."  He stated that, on page 28, there was a section entitled "What You Should Tell Us - Let us know if any of the following events occur," which made a subsequent reference to "you are imprisoned," but did not mention that a suspension of benefits would follow.  (A.R. 299.)

1    cut their own throat well unless you're crazy.

2

3  (A.R. 40.)

4

5        In his request for review of ALJ Hunter's decision of March 18,

6  2004, Plaintiff asserted that his sworn testimony at the hearing before

7  ALJ Hunter and his actions taken in 1997 were contrary to the ALJ's

8  finding that Plaintiff, by signing his application for retirement

9  benefits, affirmed that his reporting obligation had been explained to

10  him. (A.R. 296; *see also* A.R. 301 - "The final fact was, is, and will

11  continue to be, my sworn testimony stating that I was not aware of a

12  duty to report my incarceration."; and A.R. 308 - "My response to the

13  Decision on Appeal is that I was not aware of a duty to report

14  incarceration.") Plaintiff stated: "I further, respectfully affirm

15  that the duty to report conviction of a felony and subsequent

16  incarceration was not explained to me." (*Id.*) Plaintiff cited to his

17  above-described August 11, 1997 letter, asserting: "This letter speaks

18  for itself that I did not know of a duty to report conviction and

19  incarceration." (A.R. 297, 309.) Plaintiff asserted that his August

20  14, 1997 letter further showed that he did not know of the reporting

21  obligation. (A.R. 297-98, 309.) Plaintiff reiterated his contention

22  that, had he known a conviction would cause his benefits to stop, he

23  would have used his monthly benefits to retain a defense lawyer and

24  fought against conviction, rather than taking "a fast track immediate

25  plea bargain." (A.R. 298 - further stating, "BUT I DIDN'T KNOW.")

26  Plaintiff noted further that the Overpayment "was used to pay bills and

27  the house mortgage." (*Id.*)

28

23

1    For purposes of summary judgment, a verified complaint may be
2    treated as an affidavit or declaration to the extent it is based on
3    personal knowledge and sets forth facts admissible in evidence.
4    Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995); McElyea v.
5    Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); Fed. R. Civ. P. 56(e).
6    In his verified Complaint filed in this action, Plaintiff states that he
7    spent the Overpayment on his home mortgage.  (Complaint at 3.)
8    Plaintiff also "denies ever having been advised of a duty to report his
9    incarceration."  (Complaint at 17.)  Plaintiff states:  "During the
10   hearings conducted by ALJ Geb and ALJ Hunter, under oath, [he] swore, as
11   he does here, that he was never advised, nor did he read, until after
12   incarceration, that he had a duty to report his incarceration."
13   (Complaint at 19; *see also* 20.)

14

15   Based on the above-noted evidence, Plaintiff has met his burden of
16   proving that he was unaware of any duty to report his conviction and
17   incarceration and, thus, was without fault in connection with the
18   overpayment of benefits to him.  The foregoing evidence, competently and
19   convincingly,[11] is sufficient to establish, without the need for trial,
20   that Plaintiff was not aware of his reporting obligation until so
21   advised by the SSA in August 1997.  As a result, the foregoing evidence
22   is sufficient to establish that Plaintiff was without fault for purposes
23   of the above-noted overpayment, recoupment, and waiver provisions.

24

25   [11]  As discussed *infra*, while ALJ Hunter did not render any
     express adverse finding as to Plaintiff's credibility, she implicitly
26   rejected his testimony and found him not credible.  As further
     discussed, this implicit adverse determination regarding Plaintiff'S
27   credibility was erroneous.  Thus, the ALJ's implicit adverse credibility
     determination does not impeach, and raises no genuine issue of material
28   fact with respect to, Plaintiff's sworn testimony and his assertions in
     the verified Complaint.

Accordingly, the burden shifts to the Commissioner to show that one or more genuine issues for trial remain on this issue.

    2.   <u>The Commissioner's Decision</u>

ALJ Hunter concluded that Plaintiff was "not without fault in causing and accepting the" Overpayment, because "he was properly notified of his duty to report his incarceration on a felony conviction and failed to do so." (A.R. 23-24.) The ALJ's rationale for this finding is the following:

> When claimants apply for retirement benefits they are given information about their rights and responsibilities. This information is contained in a booklet entitled "When You Get Social Security Retirement or Survivor's Benefits - What You Need to Know." Although these booklets change periodically, the booklet in effect at the time [Plaintiff] applied for benefits is part of the record (Exhibit 30). On page 14 of this booklet [Plaintiff] is notified that if convicted of a crime, he must notify the Administration immediately. According to the booklet, "benefits generally are not paid for months a person is in prison for a crime." [Plaintiff] acknowledged receipt of this information by his signature at the time of the application despite the fact that the application itself did not specifically inform [Plaintiff] of this obligation. Although [Plaintiff] denied receiving this information, he admitted he failed to read the materials given to him at the time of the application. He just signed

1    forms without reading them.  I conclude [Plaintiff] was
2    sufficiently advised of his obligation to report his
3    incarceration.

4

5    (A.R. 23-24.)

6

7        Thus, the Commissioner's burden on the issue of whether Plaintiff
8    was or was not "without fault" turns on the validity of the ALJ's
9    conclusion that Plaintiff was advised adequately of his obligation to
10   report his incarceration and, hence, was at fault for "not furnishing
11   information which he knew or should have known to be material," pursuant
12   to 20 C.F.R. § 404.507(b).  Having carefully reviewed the record, the
13   Court agrees with Plaintiff's contention that the ALJ's finding on this
14   issue, and thus the Commissioner's decision, is not supported by
15   sufficient evidence, for the reasons set forth below.

16

17        3.   The Commissioner's "Not Without Fault"
18             Finding Is Not Supported By Substantial
19             Evidence.

20

21        As a threshold matter, the Court notes that its review has been
22   hampered by the fact that the Administrative Record lodged by Defendant
23   is grossly deficient, because it is missing numerous critical documents.
24   At the close of the hearing, ALJ Hunter stated that, as of that date,
25   "Exhibits 1 through 36" had been generated in connection with

26

27

28

                                    26

Plaintiff's case.   (A.R. 43.)[12]   However, at least 15 of those 36 "Exhibits" are missing from the Administrative Record.[13]   The missing documents include, *inter alia*:  Plaintiff's application for retirement benefits (Ex. 1); Plaintiff's applications for child's insurance benefits (Exs. 2-3); an April 4, 2001 "Letter to the Western Program Service Center" (Ex. 12)[14]; an unidentified "Subpoena Request" dated February 2, 2001, and a "Return Receipt for Merchandise," dated February 8, 2001 (Exs. 13-14); a "Social Security Memorandum for the File dated August 13, 2002" (Ex. 24); a "Print out sheet detailing reporting responsibilities for Retirement Insurance Benefits, given to claimants when they file for benefits" (Ex. 27); and "SSA Rules and Regulations" (Ex. 28).  (A.R. 1-2.)

At a minimum, the missing applications, communication(s) with the Western Program Service Center, internal SSA memorandum, and SSA printout of reporting responsibilities given to claimants would appear to be highly relevant to the issues raised in this action, yet they are missing, and Defendant has proffered no explanation for why these critical parts of the record have not been produced.  Moreover, these

_____

[12]   After the telephonic hearing, additional Exhibits Nos. 37 through 92 were added to the Administrative Record.  None of these after-added exhibits are missing.  (A.R. 2-5.)

[13]   Someone at the SSA (whose identity is unclear) elected to replace one of the missing documents (Ex. 1, Plaintiff's November 21, 1995 application for retirement benefits) with a different document (A.R. 48-65, a printout related to the application).  (A.R. 1.)  The fact remains, however, that the original Exhibit, a critical document in this case, remains missing.

[14]   Given the timing of this communication, it is possible that this letter related to the Appeals Council's directive that ALJ Geb attempt to obtain from the Center the informational pamphlet that would have been given to Plaintiff.

same documents were missing from the record as of the time ALJ Hunter issued her decision.[15]   (*See* Complaint at 26; Motion at 21, Ex. 7.) Given that these numerous exhibits were missing as of early 2004, if not earlier, and have not been added to the Administrative Record as of the date it was filed in this case almost three years later, the Court assumes that these "missing" portions of the record are, in fact, truly missing, and the record cannot be corrected.

Turning to the Commissioner's decision, ALJ Hunter's finding that Plaintiff "was sufficiently advised of his obligation to report his incarceration" (A.R. 24) rests on the following series of propositions: first, that claimants applying for retirement benefits are given a particular booklet of the type embodied in Exhibit 30 (A.R. 156-71); second, Exhibit 30 advises claimants they must notify the SSA if they are convicted of a crime and that benefits generally are not paid for the months a claimant is in prison; third, because Exhibit 30 is dated August 1995, it must have been given to Plaintiff when he filed his retirement benefits application in November 1995; and fourth, by signing his November 1995 application, Plaintiff acknowledged receiving Exhibit 30.   With the exception of the second proposition, which is substantiated by the text of Exhibit 30, each of these propositions lacks support in the record and is seriously flawed.

---

[15]   During the May 13, 2003 hearing before ALJ Hunter, Plaintiff complained that he had requested, but had not received, a complete copy of the file for his case, and ALJ Hunter promised to send him a copy. (A.R. 43-44.)   On March 4, 2004, almost ten months later and 14 days before ALJ Hunter issued her decision, an SSA "Lead Case Technician" sent a copy of the SSA's "exhibit file" to Plaintiff, pursuant to his "request of May 13, 2003." (A.R. 290.)   The copied file sent to Plaintiff shortly before ALJ Hunter issued her decision, like the present Administrative Record, was missing these numerous exhibits. (*See* A.R. 300, 309.)

First, there is no evidence of record substantiating the ALJ's assertion that claimants for retirement benefits are given Exhibit 30, or a version thereof, when they apply for such benefits.  (A.R. 23.) There was no witness from the SSA or documentary evidence presented at the hearing establishing this fact.  While SSA hearings, admittedly, are more informal than court proceedings and are not subject to rigid rules of evidence, the fact remains that there is no evident basis for the ALJ's assertion.   While an ALJ may take "official notice of the practices and customs of SSA district offices" as "adjudicative facts," "the ALJ must adequately inform the claimant that he is, in fact, taking official notice and must indicate the facts noticed and their source with a degree of precision and specificity."  Banks v. Schweiker, 654 F.2d 637, 640, 642 (9th Cir. 1981)(ALJ's statement in written decision that, based on his personal familiarity with District Office practices, the claimant's testimony regarding what District Office personnel had told him was not credible, did not satisfy the official notice standard and constituted reversible error).  Here, Plaintiff did not have a copy of Exhibit 30 before him at the time of the telephonic hearing, and ALJ Hunter did not mention it.[16]  Her subsequent written decision mentioned Exhibit 30 for the first time, and nothing occurred at the hearing, or is set forth in the decision, which rises to the level of taking "official notice" of SSA practices regarding the specific documents given to claimants when they apply for retirement benefits.  Thus, the first basis for the ALJ's ultimate finding is not supported by

---

[16]   The ALJ's only arguable reference to this issue was to note that, when people apply for retirement benefits, "they typically give you a pamphlet that describes the program," and to ask Plaintiff, "Did they do that with you?"  (A.R. 39.)  This vague comment, which did not identify any particular document, hardly provided Plaintiff with notice that the ALJ was taking "official notice" of any adjudicative fact.

substantial evidence.

Second, there is no evidence of record that Plaintiff received Exhibit 30.  On its face, Exhibit 30 states that two earlier editions (January 1995 and April 1995) "may be used" as well.  (A.R. 156.)  Those earlier editions are not a part of the record, and thus, there is no basis upon which the Court may conclude that those editions included Exhibit 30's language advising claimants to report convictions and of the possibility of losing benefits while incarcerated.  In any event, there is no substantial evidence establishing that Plaintiff received **any** of the three versions of this pamphlet.[17]  Given the history of Plaintiff's case and the loss of the cassette recording of the prior hearing before ALJ Geb, it is perplexing that ALJ Hunter's single attempt to elicit information about what pertinent documentation Plaintiff possessed that would have given him notice of his reporting obligation was the above-noted vague and non-probative question about generic "pamphlets" given to applicants.

Not only is ALJ Hunter's assumption that Plaintiff received Exhibit 30 bereft of evidentiary support, but it flows from an additional error committed by her, namely, an improperly-drawn adverse credibility determination.  ALJ Hunter conceded that Plaintiff "denied receiving this information," namely, the language of Exhibit 30 she quotes.  (A.R. 23.)  By concluding that Plaintiff *was* adequately advised of this information, despite his testimony otherwise, the ALJ clearly rejected

_____

[17]   In addition to Plaintiff's sworn testimony at the hearing that he did not receive any pamphlet when he applied for retirement benefits, Plaintiff stated in his request for review:  "For the life of me I can't remember seeing the pamphlet in the record (exhibit #30)."  (A.R. 299.)

Plaintiff's testimony and, thus, implicitly found him not credible. When credibility is a critical factor in the ALJ's decision, "courts have consistently required that there be an explicit finding whether the Secretary believed or disbelieved the claimant." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). In Lewin, the claimant testified that, prior to receiving notice of an overpayment, she had called the SSA to ask if the amount of her paid benefits was correct and was told the amounts were correct. The ALJ's finding that the claimant was not without fault was held to lack substantial evidentiary support, because the ALJ neither expressly discredited the claimant's testimony nor articulated any reason for questioning her credibility. Id. at 634-35. See also Albalos v. Sullivan, 907 F.2d 871, 873 (9th Cir. 1990)(holding that, when the claimant's credibility was critical to the "without fault" determination, the ALJ's "'implicit' finding" that the claimant was not credible was improper, and the ALJ's failure to make an explicit finding as to the claimant's credibility warranted reversal).

Here, by her conclusion that Plaintiff's signature on his applications proved that he received the advice set forth in Exhibit 30, ALJ Hunter implicitly found Plaintiff's testimony -- that he did not know of his reporting obligation, did not receive this pamphlet, and did not receive information advising him of this obligation -- to be not credible (A.R. 35, 39-40). This unexplained, adverse credibility determination was improper and constituted error and, therefore, cannot serve as support for the ALJ's "not without fault" finding.

Third, ALJ Hunter's assertion that Plaintiff acknowledged receiving notice of his reporting obligation by signing his November 1995

31

application is wholly unsupported.  The November 1995 application is lost, and ALJ Hunter did not have it before her when she rendered her decision; it is telling that her assertion in this respect is not supported by any citation to the record.  Put otherwise, if she had the application before her, presumably she would have cited both it and its pertinent language, which allegedly established that Plaintiff, by signing the document, had "acknowledged receipt of" the information set forth in Exhibit 30 regarding both his reporting obligation and the possibility his benefits would be cut off if he was incarcerated.  (A.R. 23.)

The Court has considered the ALJ's statement, and Defendant's related argument, that Plaintiff was not without fault, because he "signed forms without reading them."  (A.R. 23.)  The sole source for the ALJ's finding is the following portion of the hearing:  the ALJ asserted, without reference to any document, that an application for child's insurance benefits, which Plaintiff had signed, contained information regarding his obligation to report a conviction; and Plaintiff responded, "I had no idea.  I was shoving papers that, I mean, I was just signing away.  I had no idea what what sheet was saying.  I had no idea.  I was just signing papers."  (A.R. 39-40.)  As is the case with Plaintiff's November 1995 application for retirement benefits, however, the December 1995 applications for child's insurance benefits signed by Plaintiff are missing, and they were not before ALJ Hunter.  (A.R. 1.)  It is telling that, in her decision, ALJ Hunter neither repeats her hearing representation that these applications provided Plaintiff with notice of his reporting obligation nor refers to these applications at all.  Moreover, and critically, ALJ Geb -- the only

person who the record clearly shows reviewed these documents -- found that neither Plaintiff's application for retirement benefits nor the applications for child's insurance benefits he filed informed Plaintiff of his duty to report his conviction and incarceration.  (A.R. 110.)

As there is no substantial evidence establishing the substance, or Plaintiff's alleged possession, of any of the documents that purportedly provided Plaintiff with notice of his reporting obligation, his admission that he failed to read unspecified documents before signing them is irrelevant.  This unclarified admission hardly can be said to establish that Plaintiff was at fault, given the lack of any evidence actually showing that one or more documents signed by him would have provided him with notice if he had read them.  *See* <u>Romero v. Harris</u>, 675 F.2d 1100, 1104 (10th Cir. 1982)(decision that claimants were not without fault, predicated on Appeals Council finding that they answered questions about their income and resources on a certain date but failed to report savings they possessed, was reversed when no evidence of record was cited by the Appeals Council to support that finding and the ALJ had not made such a finding).

An ALJ must "build an accurate and logical bridge from the evidence to her conclusion." <u>Dixon v. Massanari</u>, 270 F.3d 1170, 1176 (7th Cir. 2001).  This did not occur here.  Three of the four propositions relied on by ALJ Hunter to support her finding that Plaintiff was not without fault are, as shown above, baseless, and her finding rests on conjecture and a patently deficient record.  At most, Defendant has shown that, at the time Plaintiff applied for retirement benefits, a pamphlet existed that advised claimants they should report criminal convictions and might

33

1  lose their benefits while incarcerated.  There is no substantial
2  evidence, however, establishing that Plaintiff received this pamphlet
3  and read it.  There also is no substantial evidence that Plaintiff was
4  made aware and/or was aware of his reporting obligation through other
5  means.  Indeed, as discussed above, the evidence of record -- including
6  Plaintiff's sworn statements that he was not aware of his reporting
7  obligation until well after his conviction and incarceration, his August
8  1997 letters, and the circumstantial evidence of his behavior in
9  connection with his fast-track bargain -- compels the contrary
10 conclusion, namely, that Plaintiff lacked knowledge of the reporting
11 requirement obligation and the related suspension of benefits which
12 arose from his felony conviction and incarceration.

13

14     Evaluating the circumstances before the Court and the entirety of
15 the record, the Court concludes that the substantial evidence standard
16 is not met here, because reasonable minds would not find the evidence of
17 record sufficient to establish that, as ALJ Hunter found, Plaintiff was
18 "sufficiently advised of his obligation to report his incarceration."
19 (A.R. 24.)  Defendant has not met its burden of establishing a genuine
20 issue for trial on the "without fault" question.  As addressed above,
21 Plaintiff has met his burden of establishing that he was without fault,
22 and no genuine issues of material fact remain.  Accordingly, Plaintiff
23 is entitled to summary judgment on his second claim.

24

25     B.   Plaintiff Also Is Entitled To Summary Judgment On
26          His Remaining Claims.

27

28     The Court's conclusion that substantial evidence does not support

34

1  the ALJ's finding that Plaintiff was not without fault does not, in

2  itself, resolve the question of the propriety of the SSA's denial of the

3  Waiver Request.   As Section 404(b) and 20 C.F.R. § 404.506(a) make

4  clear, in order to obtain a waiver of an overpayment, a claimant not

5  only must be without fault, but also recovery of the overpayment must

6  *either* defeat the purpose of Title II of the Social Security Act *or* be

7  against equity and good conscience.   By his third claim, Plaintiff

8  contends that both requirements are satisfied.   By his fourth claim,

9  Plaintiff contends that the hearing conducted by, and record before, ALJ

10  Hunter were incomplete.

12  Pursuant to 20 C.F.R. § 404.508(a), to "defeat the purpose of"

13  Title II means "defeat the purpose of benefits under" Title II of the

14  Social Security Act, *i.e.,* "deprive a person of income required for

15  ordinary and necessary living expenses."   Ordinary and necessary

16  expenses include, *inter alia,* fixed living expenses and medical costs.

17  *Id.*   Recovery of an overpayment will defeat the purpose of Title II if

18  "the person from whom recovery is sought needs substantially all of his

19  current income (including social security monthly benefits) to meet

20  current ordinary and necessary living expenses."   20 C.F.R. §

21  404.508(b).   In contrast, under the regulations, the claimant's

22  financial circumstances are not relevant to the "against equity and good

23  conscience" inquiry.   20 C.F.R. § 404.509(b)   Rather, the regulations

24  set forth a rather narrow definition and the required inquiry (in the

25  sole part arguably relevant here) is more akin to an estoppel notion,

26  namely, whether the claimant changed his position for the worse or

27  relinquished a valuable right in reliance on the overpayment.   20 C.F.R.

28  § 404.509(a)(1).   The Ninth Circuit, however, has made clear that the

element of "against equity and good conscience" set forth in Section 404(b) is not as limited as the definition set forth in 20 C.F.R. § 404.509 and must include "a broad concept of fairness" applied to the particular circumstances of a given case.  Quinlaven v. Sullivan, 916 F.2d 524, 527 (9th Cir. 1990).

With respect to the "defeat the purpose of" prong of Section 404(b), as noted above, in both his request for review and in his verified Complaint, Plaintiff has stated that the Overpayment was utilized to pay bills and his mortgage.  At the hearing, Plaintiff stated that, without his retirement benefits, he would be destitute once he was released from prison.  (A.R. 35 - "And it [the suspension of benefits] basically left us in poverty, because unless I go to work or am able to work when I get out of here -- another three years, I'll be destitute.  I'll be without any funds.")  When he requested review of ALJ's Hunter's decision, Plaintiff stated that, upon release from prison, he had no place to live and his only remaining assets were a college ring (held by friends for safekeeping) and whatever monies he had saved from his job in the prison laundry (which totaled $1,662.28 as of May 2004).  Plaintiff stated that, at age 74, he would be forced into further indigency if recovery of the Overpayment were required.  (A.R. 304, 309.)  In his verified Complaint, Plaintiff stated that, upon his release from prison, he would have no "material goods" or transportation and no money other than his meager savings from his prison job and veteran's benefits.  (Complaint at 28.)

Thus, the evidence of record establishes, without any genuine issue of material fact that:  Plaintiff spent the Overpayment shortly after he

36

received it in 1997; and as of his release from prison, Plaintiff was relatively impoverished and needed whatever monies he had for his ordinary and necessary living expenses.  Plaintiff, therefore, has met his burden of establishing that recovery of the Overpayment would defeat the purpose of benefits under Title II of the Social Security Act.

In her March 18 2004 decision, ALJ Hunter concluded that it "would not defeat the purpose of the Social Security Act" for Defendant to recover the Overpayment from Plaintiff.  (A.R. 24.)  ALJ Hunter, however, conceded both that Plaintiff was unable to repay the Overpayment based on his minimal prison earnings *and* that she lacked any evidence of his ability to repay it based on assets held outside of prison.  Her finding rests solely on her conjecture that Plaintiff "may have retained the overpayment amount in a source outside the prison system."  (A.R. 24) That rank speculation, which was contrary to fact, does not constitute evidence at all, much less the requisite substantial evidence, for the ALJ's finding that recovery of the Overpayment would not defeat the purpose of Title II.  It is particularly disturbing that, despite Plaintiff's sworn testimony that he would be "destitute" without his retirement benefits, the fact that the SSA's files would have revealed that Plaintiff was 71 years old as of the hearing date (*see, e.g.,* A.R. 278), and the fact that Plaintiff was incarcerated and not represented by counsel, ALJ Hunter elected not to ask Plaintiff *any* questions about the effect recovery of the Overpayment would have on him.[18]

_____

[18]   ALJ Hunter's determination that "[i]t is not against equity and good conscience to collect the overpayment" (A.R. 24) also is bereft of support.  The ALJ made no findings to support this ultimate

1    Plainly, ALJ Hunter's finding on the "defeat the purpose" issue
2  lacked evidentiary support.  Moreover, and equally plainly, she failed
3  to develop the record on this critical question.  The ALJ "always has a
4  'special duty to fully and fairly develop the record and to assure that
5  the claimant's interests are considered . . . even when the claimant is
6  represented by counsel.'"  Celaya v. Halter, 332 F.3d 1177, 1183 (9th
7  Cir. 2003)(ellipsis in original)(quoting Brown v. Heckler, 713 F.2d 441,
8  443 (9th Cir. 1983);  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.
9  1996).  Where the claimant is not represented by counsel during the
10 administrative hearing, the ALJ must be "especially diligent in ensuring
11 that favorable as well as unfavorable facts and circumstances are
12 elicited."  Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)(*per*
13 *curiam*)(citation omitted).  "The ALJ's duty to supplement a claimant's
14 record is triggered by ambiguous evidence, the ALJ's own finding that
15 the record is inadequate or the ALJ's reliance on an expert's conclusion
16 that the evidence is ambiguous."  Webb v. Barnhart, 433 F.3d 683, 687
17 (9th Cir. 2006)(citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th
18 Cir. 2001)).  Here, ALJ Hunter admitted that the record was inadequate,
19 because Plaintiff's ability to repay the Overpayment based on his assets
20 was "unknown."  Despite this conceded deficiency in the record, she
21 nonetheless found that recovery of the Overpayment would not defeat the
22 purpose of Title II.  (A.R. 24.)  This baseless finding on a critical
23 issue constitutes reversible error.

24

25    ALJ Geb held a hearing and, as a result, concluded that it would be
26 a financial hardship for Plaintiff to repay the Overpayment, finding

27 _____

28 conclusion and made no effort at the hearing to elicit information
   relevant to this issue.

that Plaintiff had no ability to repay and no assets or income.  (A.R. 110.)  The SSA, unfortunately, lost the recording of that hearing.  At the hearing before ALJ Hunter, Plaintiff confirmed that finding under oath, stating that he would be without funds and destitute when released from prison.  (A.R. 35.)

The Court concludes that Plaintiff is entitled to summary judgment on his third and fourth claims, because:  he has met his burden of showing that there are no genuine issues of material fact on the "defeat the purpose" and incomplete record issues posed by these two claims; and Defendant had failed to show that any genuine issues for trial exist as to these two claims.  The record before the Court is adequate to establish, without any genuine issues of material fact, that recovery of the Overpayment would defeat the purpose of Title II of the Social Security Act.  There simply is no dispute that ALJ Hunter neglected her duty to develop the record for the reasons set forth above and, as discussed in the previous Section, the record on which she based her decision was woefully incomplete given the numerous critical documents missing from the record when she rendered her decision.  Accordingly, Plaintiff is entitled to summary judgment on all of the Complaint's remaining claims.

C.   <u>Reversal And An Award Of Benefits Is Appropriate</u>.

Respondent argues that, if the Court finds that Plaintiff was "without fault," it should remand this case so that the SSA can "clarify whether it would be against equity and good conscience to recover the overpayment, under the principles described in <u>Quinlaven</u>."  (Cross-

39

Motion at 9, 11.)  The rationale of <u>Quinlaven</u>[19] might justify finding on remand that it would be against equity and good conscience to require repayment of the Overpayment in this case.  However, there is no need to do so, given the Court's conclusion that recovery of the Overpayment would defeat the purpose of Title II of the Social Security Act, and no genuine issue remains for trial on this question.  The "equity and good conscience"/"defeat the purpose" requirements are disjunctive, not conjunctive.  Having found the latter requirement to be met here, without any genuine issues of material fact remaining, there simply is no reason to remand for an adjudication of the former requirement.

The Court also concludes that there is no other reason to remand this case for further administrative proceedings.  In a Section 405(g) case such as this, the decision whether to remand for further proceedings is within the Court's discretion.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).  As the Ninth Circuit has repeatedly held, when the record is fully developed and a remand for further administrative proceedings would serve no purpose, the Court should remand for an award and payment of benefits.  *See, e.g.,* <u>Benecke v. McCarthy</u>, 379 F.3d 587, 593 (9th Cir. 2004); <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995);

---

[19]   <u>Quinlaven</u> involved the SSA's denial of a waiver request over three years after a claimant was released from prison and already had spent the monies received from an overpayment of disability benefits on necessary living expenses.  Due to mental illness, the claimant was not able to work and received a minimal monthly amount in state welfare benefits.  The Ninth Circuit concluded that it was unfair to have expected the claimant to have held the overpayment monies for several years while he awaited the SSA's resolution of his waiver request, given his poor financial status and inability to work, and found that recovery of the overpayment was precluded by equity and good conscience. <u>Quinlaven</u>, 916 F.2d at 527.

1   Smolen, 80 F.3d at 1292.  That principle governs here.

2

3       The Overpayment was assessed in 1997, and after struggling to

4   obtain the proper form from the SSA, Plaintiff submitted his Waiver

5   Request in mid-1999.  (A.R. 231.)  After ALJ Geb developed the record

6   and held a hearing, ALJ Geb made findings in Plaintiff's favor that

7   supported granting the Waiver Request.  Subsequently, however, the SSA

8   lost the recording of that hearing and effectively ordered the process

9   to start over again, before a new ALJ.  Moreover, by that time, the

10  documents critical to resolving the Waiver Request issue, including

11  Plaintiff's applications for benefits, apparently had disappeared.  ALJ

12  Hunter had a chance to attempt to re-develop the record and failed to do

13  so, as outlined above.  Throughout this protracted process, Plaintiff,

14  although proceeding *pro se* and incarcerated, and despite the SSA's

15  repeated failures to respond to his requests and loss of documents, has

16  continued to attempt to resolve the issue through articulate and

17  respectful communications with the SSA.

18

19      In Benecke, the Ninth Circuit emphasized that "[a]llowing the

20  Commissioner to decide the issue again would create an unfair 'heads we

21  win; tails, let's play again' system of disability benefits

22  adjudication."  379 F.3d at 595.  In Moisa v. Barnhart, 367 F.3d 882,

23  887 (9th Cir. 2004), after finding that reversal was justified due to

24  the ALJ's commission of clear error in rejecting the claimant's pain

25  testimony, the Ninth Circuit concluded that a remand for an award of

26  benefits, rather than for further proceedings on the credibility issue,

27  was appropriate, reasoning: "The Commissioner, having lost this appeal,

28  should not have another opportunity to show that [plaintiff] is not

41

credible any more than [plaintiff], had he lost, should have an opportunity for remand and further proceedings to establish his credibility." *See also* <u>Sisco</u>, 10 F.3d at 746 (the Tenth Circuit, noting that the claimant's benefits claim had been adjudicated by the Commissioner twice at all levels over a four-year period and finding that substantial evidence did not support the finding that the claimant was not disabled, reversed and remanded for an award of benefits, opining: "The Secretary is not entitled to adjudicate a case '*ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'" (citation omitted)).

Defendant has had multiple opportunities to resolve Plaintiff's Waiver Request properly, yet has proven unable to do so. The documents critical to this question have been lost, and there is no basis for believing they can be recovered. For the reasons set forth above, the Court has found the record sufficient to establish, without any genuine issue of material fact, that Plaintiff satisfies the requisites of Section 404(b) that he is without fault and recovery of the Overpayment would defeat the purpose of Title II of the Social Security Act. Hence, there is no legitimate reason for further delay or administrative proceedings on the Overpayment issue.

Accordingly, IT IS ORDERED that:

1.   Plaintiff's Motion is GRANTED, and Plaintiff is granted summary judgment, for the reasons set forth herein;

2.   Defendant's Cross-Motion is DENIED; and

3.   Judgment   shall   be   entered   reversing   the   decision   of   the
     Commissioner, and remanding the matter for further administrative
     action   consistent   with   this   Memorandum   Opinion   and   Order,
     including:

     a.   A grant of the Waiver Request; and

     b.   A reimbursement to Plaintiff of any monies withheld from his
          current retirement benefits *if* the Commissioner has withheld
          any monies from Plaintiff's retirement benefits as recovery
          for the Overpayment.   *See* <u>Quinlaven</u>, 916 F.2d at 527.

     IT IS SO ORDERED.

DATED: March 28, 2008.

                                        _____
                                                  /s/
                                        MARGARET A. NAGLE
                                        UNITED STATES MAGISTRATE JUDGE

43